UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-61195-MARTINEZ/VALLE

TIFFANY (NJ) LLC,

    Plaintiff,

v.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff Tiffany (NJ) LLC's ("Plaintiff's") Motion for Entry of Default Final Judgment Against Defendants (ECF No. 37) (the "Motion"). United States District Judge Jose E. Martinez referred the Motion to the undersigned for a Report and Recommendation. (ECF No. 38). Upon review of the Motion, supporting declarations, and the record in this matter, the undersigned recommends that Plaintiff's Motion be **GRANTED**.

### I.    BACKGROUND

**A. Plaintiff's Claims**

Plaintiff manufactures quality goods in several categories, including jewelry, decorative art and objects, wallets, tote bags, and handbags. (ECF No. 19 ¶ 15) *see also* (ECF No. 9-1 ¶ 4) (Declaration of Pilar Toro) ("Toro Decl."). As such, Plaintiff is the owner of the federally registered trademarks listed in Paragraph 15 of the Amended Complaint, which seeks damages and injunctive relief. *See* (ECF No. 19) (the "Amended. Compl." ¶ 15) (the "Tiffany Marks").[1]

---

[1] Capitalized terms not defined in this Report and Recommendation are defined in the Amended Complaint (ECF No. 19) and/or Motion (ECF No. 37).

Defendants are 49 individuals, business entities, and unincorporated associations identified on Schedule A of Amended Complaint. Amended Compl. at 25-32. Plaintiff alleges that Defendants, through Internet based e-commerce stores have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of one or more of the Tiffany Marks. *See* Toro Decl. ¶¶ 9, 11-13; *see also* (ECF No. 9-2 ¶¶ 2-3) (Declaration of Stephen M. Gaffigan); (ECF No. 9-3 ¶ 4) (Declaration of Kathleen Burns).

Plaintiff's Amended Complaint alleges claims against Defendants for: (i) trademark counterfeiting and infringement, pursuant to 15 U.S.C. § 1114 (Count 1); (ii) false designation of origin, pursuant to 15 U.S.C. § 1125(a) (Count 2); (iii) common law unfair competition (Count 3); and (iv) common law trademark infringement (Count 4). *See generally* Amended Compl.

## B. Procedural Background

On July 9, 2024, Plaintiff filed its initial Complaint against Defendants. *See generally* (ECF No. 1). On July 10, 2024, Plaintiff filed Ex Parte Motions for: (i) Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Asset; and (ii) Order Authorizing Alternate Service of Process. *See* (ECF Nos. 9,10). On July 16, 2024, the Court granted Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and authorized Plaintiff to serve the summons, Complaint, and all subsequent filings in this matter upon Defendants via e-mail and posting copies of the same on Plaintiff's designated service notice website. *See* (ECF Nos. 13, 14).

On July 23, 2024, Plaintiff filed the Amended Complaint. (ECF No. 19). Pursuant to the TRO, Plaintiff served Defendants with a copy of all filings in this matter, including the initial and Amended Complaint, Plaintiff's Motion, the witness declarations, the TRO, and the undersigned's

Order setting the preliminary injunction hearing. *See* (ECF Nos. 23, 24). Nonetheless, only counsel for Plaintiff appeared at the August 7, 2024 preliminary injunction hearing. *See* (ECF No. 27).

On August 22, 2024, Plaintiff filed an Affidavit of Service certifying that it had served Defendants via "e-mail address, customer service e-mail, onsite contact form, or via the e-commerce marketplace platform for each of the e-commerce stores by providing the URL address to the server page where these documents reside." (ECF No. 32-1 at 2). Plaintiff also notified Defendants that "all documents filed in the case can be found posted on the website located at http://servingnotice.com/Tk5pS1/index.html." *Id.* The following day (August 23, 2024), the Clerk of Court entered a Clerk's Default against Defendants. *See* (ECF No. 35). On the same day, the District Court adopted the undersigned's recommendation and entered a Preliminary Injunction against Defendant. *See* (ECF Nos. 28, 34). The instant Motion followed.

In the Motion, Plaintiff seeks, among other things, to: (i) cancel, or at Tiffany's election, transfer the e-commerce stores at issue to Tiffany, assign all rights, title and interest to the e-commerce stores to Tiffany; (ii) permanently disable, delist or deindex the websites' uniform resource locators ("URLs") and e-commerce stores from all search engines; (iii) permanently remove the listings and associated images of the goods bearing and/or using counterfeits and/or infringements of the Tiffany Marks used by Defendants from all Internet based e-commerce stores and the goods of each Defendant bearing one or more of the Tiffany Marks held by the marketplace platforms be surrendered to Tiffany; and (iv) permanently disable and/or terminate Defendants' messaging application and/or service accounts, including e-mail addresses used by Defendants, in order to ensure the associated e-commerce stores may no longer be used as a means for selling goods bearing and/or using counterfeits and infringements of Tiffany's trademarks and infringing upon Tiffany's rights. (ECF No. 37 at 2); Amended Compl. at 18-23 (Prayer for Relief).

3

To date, Defendants have failed to answer or otherwise respond to the Amended Complaint or the Motion. The time for Defendants to respond to the Amended Complaint and the Motion has expired. (ECF No. 37 at 6). Further, to Plaintiff's knowledge, Defendants are not infants or incompetent persons, and the Servicemembers Civil Relief Act does not apply. *Id.*

## II.  LEGAL STANDARD

A party may apply to the Court for a default judgment when the defendant fails to timely respond to a pleading. Fed. R. Civ. P. 55(b)(2). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotations omitted) (quoting *Nishimatsu. Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1205 (5th Cir. 1975)).[2] However, conclusions of law are to be determined by the court. *Mierzwicki v. CAB Asset Mngmt. LLC*, No. 14-CV-61998, 2014 WL 12488533, at *1 (S.D. Fla. Dec. 30, 2014) (citation omitted). Therefore, a court may only enter a default judgment if there is a "sufficient basis to state a claim." *Id.*

Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted). Although an evidentiary hearing is generally required, the Court need not conduct such a hearing "when . . . additional evidence would be truly unnecessary to a fully informed determination of damages." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017). Therefore, where the record adequately supports the award of damages, an evidentiary hearing is not required. *See SEC v. Smyth,* 420 F. 3d 1225, 1232 n.13 (11th Cir. 2005); *see also PetMed Express*, 336 F. Supp. 2d at 1217 (finding evidentiary hearing

---

[2] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

4

unnecessary because plaintiff was seeking statutory damages under the Lanham Act); *Luxottica Group S.p.A. v. Casa Los Martinez Corp.*, No. 14-CV-22859, 2014 WL 4948632, at *2 (S.D. Fla. Oct. 2, 2014) (same).

### III. DISCUSSION

#### A. Plaintiff Has Sufficiently Plead its Claims

The Amended Complaint asserts four claims against Defendants: (i) trademark counterfeiting and infringement, pursuant to 15 U.S.C. § 1114 (Count 1); (ii) false designation of origin, pursuant to 15 U.S.C. § 1125(a) (Count 2); (iii) common law unfair competition (Count 3); and (iv) common law trademark infringement (Count 4). *See generally* Amended. Compl.

*1.    Trademark Counterfeiting and Infringement Under the Lanham Act (Count 1)*

Under § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), liability for trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" that "is likely to cause confusion, or to cause mistake, or to deceive." *PetMed Express*, 336 F. Supp. 2d at 1217-18 (citations omitted). Thus, to prevail on a trademark infringement claim, a plaintiff must demonstrate that: (i) its mark has priority; (ii) defendant used its mark in commerce; and (iii) defendant's mark is likely to cause consumer confusion. *Id*. Additionally, the analysis of liability for Florida common law trademark infringement (as in Count 4) is the same as under the Lanham Act. *Id*. (citing *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003)).

In Count 1, Plaintiff alleges that:

> 42.  Defendants are promoting and otherwise advertising, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and/or infringements of one or more of the Tiffany Marks. Defendants are continuously infringing and inducing others to infringe the Tiffany Marks by using one or more of the trademarks to advertise, promote, offer to sell, and/or sell counterfeit and infringing Tiffany branded goods.

> 43. Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.
>
> 44. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Tiffany and are unjustly enriching Defendants with profits at Tiffany's expense.
>
> * * *
>
> 46. Tiffany has suffered and will continue to suffer irreparable injury and damages while Defendants are earning a substantial profit due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

Amended. Compl. ¶¶ 42-44, 46; *see also id.* ¶¶ 63-65 (alleging common law trademark infringement in Count 4).

Based on these allegations, which are admitted upon Defendants' default, Plaintiff has satisfied the elements to establish a claim for federal and common law trademark infringement as alleged in Counts 1 and 4.

2. *False Designation of Origin Pursuant to § 43(a) of the Lanham Act (Count 2)*

Section 43(a) of the Lanham Act makes it unlawful for "[a]ny person . . . in commercial advertising or promotion, [to] misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To state a claim under § 43 of the Lanham Act, a plaintiff must show that: (i) the defendant's statements were false or misleading; (ii) the statements deceived, or had the capacity to deceive, consumers; (iii) the deception had a material effect on the consumers' purchasing decision; (iv) the misrepresented service affected interstate commerce; and (v) it has been, or likely will be, injured as a result of the false or misleading statement. *Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

In Count 2, Plaintiff alleges that:

> 50. Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and

6

representations, including words or other symbols and designs, which falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Tiffany's detriment.

51. Defendants have each authorized infringing uses of one or more of the Tiffany Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods they advertise and sell are genuine, non-infringing goods.

52. Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of the Tiffany Marks to unfairly compete with Tiffany and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Tiffany of valuable marketing and educational space online which would otherwise be available to Tiffany, and (ii) reducing the visibility of Tiffany's genuine goods on the World Wide Web and across social media platforms.

* * *

54. Tiffany has no adequate remedy at law and has sustained both individual indivisible injury and damages caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Tiffany will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendants are earning a substantial profit.

Amended Compl. ¶¶ 50-52, 54.

Based on these allegations, which are admitted upon Defendants' default, Plaintiff has satisfied the elements to establish a claim for false designation of origin under the Lanham Act as alleged in Count 2.

   3.   *Florida Common Law Unfair Competition (Count 3)*

Under Florida common law, the determining factor in the analysis of unfair competition is whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-CV-8381, 1986 WL 15668, at *4 (S.D. Fla. Dec. 9, 1986) ("[I]t is clear that the Court need not find 'actual confusion' . . . . The proper test is 'likelihood of confusion'").

In Count 3, Plaintiff alleges that:

56. This is an action against Defendants based on their promotion, advertisement,

7

> distribution, offering for sale, and/or sale of goods bearing and/or using marks that are virtually identical to one or more of the Tiffany Marks in violation of Florida's common law of unfair competition.
>
> 57. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of the Tiffany Marks. Defendants are also each using counterfeits and infringements of one or more of the Tiffany Marks to unfairly compete with Tiffany and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.
>
> 58. Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of the Tiffany Marks.
>
> 59. Tiffany has no adequate remedy at law and is suffering irreparable injury and damages because of Defendants' actions, while Defendants are unjustly profiting from those actions.

Amended Compl. ¶¶ 57-59.

Based on these allegations, which are admitted upon Defendants' default, Plaintiff has satisfied the elements to establish a claim for unfair competition under Florida common law as alleged in Count 3.

    4.    *Florida Common Law Trademark Infringement (Count 4)*

The analysis of liability for Florida common law trademark infringement under Count 4 is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act in Count 1. *See PetMed Express*, 336 F. Supp. 2d at 1217-18. Accordingly, Plaintiff has satisfied the elements to establish a claim for Florida common law trademark infringement. *See supra* section III.A.1.

    **B.**    **Plaintiff is Entitled to Injunctive Relief and Statutory Damages**

Plaintiff requests injunctive relief and statutory damages against Defendants for trademark counterfeiting and infringement as to Count 1. (ECF Nos. 19 ¶¶ 38, 66, 37 at 8-12). In Counts 2, 3,

and 4, Plaintiff limits its request for damages to the equitable relief and monetary damages awarded pursuant to Count 1. (ECF No. 37 at 16).

### 1. *Injunctive Relief as to Count 1*

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (alteration in original) (citation omitted). Injunctive relief is available even in the default judgment setting, *see, e.g., PetMed Express,* 336 F. Supp. 2d at 1222-23, because a defendant's failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction. *See, e.g., Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (i) it has suffered irreparable injury; (ii) there is no adequate remedy at law; (iii) the balance of hardship favors an equitable remedy; and (iv) an issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006). Here, Plaintiff has carried its burden on each of the four factors. Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit

jeans would damage [plaintiff's] business reputation and decrease its legitimate sales."). Plaintiff's Amended Complaint and the supporting declarations reflect that the goods produced and sold by Defendants are nearly identical to Plaintiff's genuine products, and consumers viewing Defendants' counterfeit goods post-sale would confuse them for Plaintiff's genuine products. *See, e.g.*, (ECF No. 19 ¶ 24) ("Defendants are each using virtually identical copies of one or more of the Tiffany Marks for different quality goods. Tiffany has used the Tiffany Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Tiffany's merchandise."); *Id.* ¶ 32 ("Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase."); *Id.* ¶ 43 ("Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.").

Further, Plaintiff has no adequate remedy at law while Defendants are unjustly profiting from their actions. *See, e.g., id.* ¶ 54 ("Tiffany has no adequate remedy at law and has sustained both individual and indivisible injury and damages caused by Defendants' concurrent conduct"). An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill if Defendants' infringing and counterfeiting continue. *Id.* ¶ 38 ("Tiffany is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the Tiffany Marks. If Defendants' intentional counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Tiffany and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit"). Thus, absent an entry of an injunction, Tiffany will continue to suffer irreparable injury to its goodwill and business reputation. *Id.* ¶ 54. Conversely, Defendants face no hardship if they are prohibited from the infringement of the Tiffany Marks, to which they have no right.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products, and potentially harmed by their inferior quality. *See Chanel, Inc. v. besumart.com,* 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."); *see also World Wrestling Entm't, Inc. v. Thomas*, No. 12-CV-21018, 2012 WL 12874190, at *8 (S.D. Fla. Apr. 11, 2012) (considering the potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing public's interest in an injunction).

Broad equity powers also allow the Court to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case.") (alterations added; citation and quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.") (citations omitted)). Accordingly, District Courts may order the transfer or surrender of domain names in an *in rem* action against a domain name. *See* 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g., Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230 n.2 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting 15 U.S.C. § 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering defendants to disclose all other domain registrations they

held and to transfer registration of a particular domain name to plaintiff partly under authority of 15 U.S.C. § 1116(a)). Indeed, this Court and other courts in this District have ordered the transfer of domain names under similar scenarios.[3]

Accordingly, the Court may fashion injunctive relief to eliminate how Defendants are conducting their unlawful activities. To that end, the E-commerce Store Names should be ordered transferred to Tiffany's control by Defendants, their registrars, and/or registries. Further, Defendants, their agents or assigns, should be required to: (i) assign all rights, title, and interest, to their E-commerce Store Names to Tiffany; and (ii) instruct all search engines to permanently disable, delist or deindex websites' URLs and the e-commerce stores from all search engines, so they may no longer be used for illegal purposes. Moreover, all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Tiffany Marks via the E-commerce Store Names, identified on Schedule "A" of the Amended Complaint (and any other alias seller names being used and/or controlled by Defendants to promote, offer for sale, and/or sell goods bearing and/or using counterfeits and/or infringements of the Tiffany Marks), should be permanently removed by any Internet marketplace website operators and/or administrators. Further, the goods of each Defendant bearing and/or using one or more of the Tiffany Marks that are in the inventory, possession, custody, or control of any of Defendants and any Internet marketplace website operators

---

[3] *See e.g., Chanel, Inc. v. The Individuals, Business Entities, & Unincorporated Ass'ns,* No. 22-CV-60194-JEM (S.D. Fla. March 16, 2023) (ECF No. 55) (order requiring, inter alia, transfer of domains to plaintiff); *see also Vineyard Vines, LLC v. Individuals, Business Entities, & Unincorporated Ass'ns Identified on Schedule "A,"* No. 21-CV-61991-KMW (S.D. Fla. Dec. 21, 2021) (ECF No. 42) (ordering, inter alia: (i) transfer of domain names at issue as part of grant of permanent injunction; (ii) assignment of all rights, title, and interest to defendants' domain names used to promote, offer for sale, and/or sell goods bearing counterfeits and/or infringements of plaintiff's trademarks to plaintiff; and (iii) permanent de-indexing or delisting of defendants' domain names from internet search engines); *Richemont Int'l SA v. Keller,* No. 19-CV-62897-KMW (ECF No. 49) (S.D. Fla. May 15, 2020) (same); *Chanel, Inc. v. aozhu9284*, No. 19-CV-63068-KMW (ECF No. 67) (S.D. Fla. Feb. 25, 2020) (same); *Malletier v. Aaalvsale.com*, No. 21-CV-60790-BB, 2021 U.S. Dist. LEXIS 81124 (S.D. Fla. Apr. 28, 2021) (same); *Louis Vuitton Malletier v. aaalvshop.com*, No. 19-CV-61986-RAR, 2019 U.S. Dist. LEXIS 223653 (S.D. Fla. Nov. 21, 2019) (same).

and/or administrators should be surrendered to Tiffany. Lastly, the E-commerce Store Names, private message accounts, usernames, e-commerce stores, social media accounts, and e-mail addresses used by Defendants in connection with their promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of the Tiffany Marks via the E-commerce Store Names should be permanently suspended and/or terminated by the Defendants and the applicable third-party service providers so that they may no longer be used to facilitate Defendants' counterfeiting activities. Accordingly, Plaintiff should be awarded injunctive relief as sought in Count 1.

2. *Statutory Damages for Counts 1, 2, 3, and 4*

In Count 1, Plaintiff also seeks statutory damages under 15 U.S.C. § 1117(c) (providing statutory damages for use of counterfeit marks). (ECF Nos. 19 ¶ 66(o), 37 at 15). Pursuant to § 1117(c), a plaintiff may elect an award of statutory damages at any time before final judgment in the sum of not less than $1,000 nor more than $200,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). Additionally, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000 per mark per type of good. 15 U.S.C. § 1117(c)(2).

The Court has wide discretion to set an amount of statutory damages. *PetMed Express*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *Ford*, 441 F. Supp. 2d at 852 ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); *see also PetMed Express*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure").

Moreover, a defendant's intent can be evidence of willfulness, triggering an enhanced statutory award. *Id*. A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. *See Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. *See PetMed Express*, 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true); *Arista Records,* 298 F. Supp. 2d at 1313 (finding a court may infer willfulness from the defendants' default). Here, the evidence establishes that Defendants intentionally copied the Tiffany Marks for the purpose of deriving the benefit of Plaintiff's goodwill and reputation. (ECF No. 19 ¶ 31) ("Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Tiffany's rights for the purpose of trading on Tiffany's goodwill and reputation."). Defendants have also defaulted on Plaintiff's allegations of willfulness. *Id*; *see also* (ECF No. 37 at 14).

Plaintiff requests a statutory damage award of $100,000 against each Defendant based upon each Defendant's use of at least one counterfeit mark on one type of good. (ECF No. 37 at 15). This Court and other courts in this District have granted similar statutory damages under the Lanham Act.[4] Accordingly, the undersigned recommends that the District Court award statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities. Lastly, damages for Counts 2, 3, and 4 should be limited to the same equitable and statutory damages awarded under Count 1. *Id.* at 16.

---

[4] *See e.g., Chanel,* No. 22-CV-60194-JEM (ECF Nos. 51, 55) (accepting Magistrate Judge's recommendation to award $100,000 in statutory damages per defendant); *Chanel, Inc. v. Designerreplicachanel.com*, No. 17-CV-62048-KMW, 2018 U.S. Dist. LEXIS 227392 (S.D. Fla. Aug. 22, 2018) (awarding plaintiff $1,000,000 against each defendant); *Vineyard Vines,* 21-CV-61991-KMW (ECF No. 41 at 4) (same); *Richemont Int'l*, No. 19-CV-62897-KMW (S.D. Fla. May 15, 2020) (ECF No. 48 at 4) (same); *Chanel,* 2018 U.S. Dist. LEXIS 227392, at *4 (same).

### IV. RECOMMENDATION

For the reasons set forth above, the undersigned respectfully recommends that Plaintiff's Motion for Entry of Final Default against Defendants (ECF No. 37) be **GRANTED**. The Court should enter a Default Final Judgment and Permanent Injunction as proposed at ECF No. 37-4.

Within **14 days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2023); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida December 4, 2024.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Jose E. Martinez
All Counsel of Record